IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| LARRY PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:14-cv-00144 |
| v. ) | Senior Judge Haynes |
| ) | |
| KAREN ORTON, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Plaintiff, Larry Payne, a state prisoner, filed this action under 42 U.S.C. § 1983 against the Defendants: Karen Orton, Ginda Stricklin, Wendy Ashe, Daniel Pritchard, Arvil Chapman, Brandy Keeton, and Valerie Landquist. Plaintiff asserts an Eighth Amendment claim that the Defendants denied him a medical evaluation for a special diet that resulted in Plaintiff's weight loss, headaches and other illnesses.

Before the Court are the Defendants' motion for summary judgment (Docket Entry No. 98) and the Plaintiff's amended motion to dismiss the Defendants' motion for summary judgment (Docket Entry No. 127). In their motion, the Defendants submit that a medical test determined that Plaintiff was not allergic to onions or tomatoes and thus Plaintiff did not have a severe medical condition necessary for his Eighth Amendment claim. Plaintiff's motion cites the Tennessee Department of Correction's ("TDOC") medical director's order for an evaluation of Plaintiff's need for a special diet that the Defendants allegedly ignored. Defendants respond that prior to the TDOC director's order, a nurse had already determined Plaintiff was not allergic to onions or tomatoes and Plaintiff was offered alternative meals.

## A. Findings of Fact

Plaintiff was an inmate at the South Central Correctional Facility ("SCCF") operated by Correction Corporation of America ("CCA"). (Docket Entry No. 104, Chapman Declaration, at ¶¶ 2, 4). Plaintiff was transferred to SCCF on or about February 6, 2014, from West Tennessee Sate Penitentiary ("WTSP"). (Docket Entry No. 105, Orton Declaration, at ¶ 5). Prior to this transfer, Plaintiff complained to WTSP medical personnel that he was allergic to onions and tomatoes on at least one occasion. (Docket Entry No. 106, Keeton Declaration, at ¶ 11). On February 11, 2013, Plaintiff told WTSP's medical clinic of his adverse reaction to onions and the WTSP's nurse examined Plaintiff and did not find any shortness of breath, skin rash, or swelling of the throat. Id. The WTSP nurse noted that Plaintiff did not have any medical history of food or drug allergies. Id. WTSP's medical staff concluded that Plaintiff did not suffer from food allergies and did not place Plaintiff on a therapeutic diet. Id. On Plaintiff's medical transfer form, WTSP medical personnel did not identify any special diet need for Plaintiff nor any food allergies. Id. at ¶ 12.

Within a month after his transfer to SCCF, Plaintiff made multiple visits to the SCCF medical clinic, but Plaintiff never complained to SCCF's medical staff of any adverse reaction to onions and tomatoes. Id. at ¶ 13. After Plaintiff threatened to harm himself, Staci Turner, a nurse practitioner at SCCF, immediately ordered Plaintiff to be placed temporarily on a finger food only diet to prevent his access to utensils. Id. at ¶ 15. The next day, Plaintiff complained only of chest pain. Id.

On March 5, 2014, Nurse Turner ended the utensil restriction. On March 7, 2014, Plaintiff complained to SCCF medical staff that he was allergic to onions and tomatoes and requested a "special diet." Id. at ¶ 16. Defendant Orton saw Plaintiff on March 7th and did not discern any

2

symptoms of shortness of breath, difficulty swallowing, skin rashes, or swelling of the throat that are associated with food allergies. (Docket Entry No. 105, Orton Declaration, at ¶¶ 10-11). Defendant Orton also reviewed Plaintiff's medical records for any documented allergies and found none. Defendant Orton did not order a therapeutic diet for Plaintiff, but instructed Plaintiff to avoid onions and tomatoes and select the alternate meal at meal times. Id. at ¶ 12. On March 15, 2014, due to Plaintiff's threats to himself, Nurse Turner ordered another finger food diet. Id. at ¶ 13.

Plaintiff's next medical clinic visit was on August 11, 2014, when he complained of left foot pain. (Docket Entry No. 106, Keeton Declaration, at ¶ 21). On August 18, 2014, Plaintiff requested mental health treatment. Id. at ¶ 22. On August 21, 2014, Plaintiff renewed his complaints about onions and tomatoes and Dr. Robert Coble, a SCCF physician, examined Plaintiff, but did not find any symptoms of food allergies nor any history of food allergies. Id. at ¶ 23. Dr. Coble did not order a therapeutic diet. Id.

Plaintiff filed eleven (11) grievances at SCCF, of which five (5) complained about the meals at SCCF and the refusal of Defendants Ashe, Orton, Keeton, and others to provide him a "special diet" without onions and tomatoes. (Docket Entry No. 108, Staggs Declaration, at ¶ 10). Plaintiff never complained about Defendants Chapman or Landquist in his grievances. Id. at ¶ 11. SCCF's response to Plaintiff's grievances was that "special diets" are provided only as medically indicated and Plaintiff's medical history did not reflect any food allergies. Id. at ¶ 12.

According to Plaintiff's medical records, on August 27, 2015, Plaintiff underwent a radioallergosorbent (RAST) test to determine whether he was allergic to onions. (Docket Entry No. 106, Keeton Declaration, at ¶ 27). The result of Plaintiff's RAST test was that Plaintiff is not allergic to onions. Id.

3

Under CCA's and SCCF's policy, inmate meals must be nutritionally balanced and satisfying to meet governmental standards and the standards of the American Dietetic Association, the National Academy of Science, the American Correctional Association, and the National Commission on Correctional Health Care. (Docket Entry No. 104, Chapman Declaration, at ¶ 5). Under these polices, there are three exceptions for religious diets, an "alternative meal service" for inmates with safety issues, and "therapeutic diets" under orders of the inmate's treating physician or as directed by a responsible health authority. Id. at ¶ 6. Defendants Chapman, Pritchard, Stricklin, Ashe, and Landquist lacked any authority to order a therapeutic diet. Id. at ¶ 7.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

4

> there be no genuine issue of material fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see Routman</u>, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323.

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards . . . ." <u>Martin v. Kelley</u>, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's

5

burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex, 477 U.S. at 323; Fed. R. Civ. P. 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained that

> [t]he respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Prods., Inc., 914 F.2d 790, 792 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 251-52) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law:

More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>

\* \* \*

Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that

[i]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.

It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute . . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New International Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

8

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts

under the governing law?

Under the Eighth Amendment, prisoners have a right to medical care. The standard for deciding whether this right has been violated has been stated as follows:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

These standards were explained further by the Supreme Court stating that the action must be characterized as "repugnant to the conscience of mankind." Id. at 105. The Sixth Circuit has stated that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Yet, "medical attention rendered may be so woefully inadequate as to amount to no treatment at all." Id.

In Estelle, the prisoner had been examined on seventeen (17) occasions and the Supreme Court found that a failure to take an x-ray and to perform other diagnostic tests represented a claim for negligence. The Supreme Court made it clear that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid Eighth Amendment claim:

> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.

10

> An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain.
>
> * * *
>
> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105-06 (footnote omitted).

As it were with other Eighth Amendment claims, this claim likewise has objective and subjective components. In Helling v. McKinney, 509 U.S. 25 (1993), the Supreme Court held that prisoners' exposure to environmental tobacco smoke stated an Eighth Amendment claim, satisfying both objective and subjective components for this Eighth Amendment claim.[1] As to the objective component, i.e., a serious medical condition, the Court noted that there can be multiple instances in which prisoners would not be required to manifest symptoms of a disease before they would be entitled to protection from exposure, such as communicable diseases, unsafe drinking water,

---

[1] Prior to Helling, in Hunt v. Reynolds, 974 F.2d 734, 736 (6th Cir. 1992), the Sixth Circuit ruled that "the Eighth Amendment's objective component is violated by forcing a prisoner with a serious medical need for a smoke-free environment to share his cell with an inmate who smokes." In Hunt, the plaintiff was a sixty-three (63) year old man who suffered from pulmonary disease as well as heart disease and an ulcer. Now, in light of Helling, "an inmate need not establish that he is currently suffering from a serious medical problem in order to state an Eighth Amendment claim regarding exposure to smoke." Jacobs v. Young, 51 F.3d 272, 1995 WL 150402 (6th Cir. 1995) (unpublished).

11

hepatitis, and venereal disease. 509 U.S. at 33. Other instances include exposure to exposed electrical wiring, deficient fire-fighting measures, and mingling of inmates with serious contagious diseases. Id. at 34.

The Court then explained the objective and subjective factors for this type of Eighth Amendment claim:

> Also with respect to the objective factor, determining whether McKinney's conditions of confinement violate the Eighth Amendment requires <u>more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.</u>
>
> <u>On remand, the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct, which may have changed considerably since the judgment of the Court of Appeals.</u> Indeed, the adoption of the smoking policy mentioned above will bear heavily on the inquiry into deliberate indifference. In this respect we note that at oral argument McKinney's counsel was of the view that depending on how the new policy was administered, it could be very difficult to demonstrate that prison authorities are ignoring the possible dangers posed by exposure to ETS. The inquiry into this factor also would be an appropriate vehicle to consider arguments regarding the realities of prison administration.

Id. at 36-37 (citation omitted and emphasis added).

Here, the undisputed facts are that at the time of his transfer to SCCF, Plaintiff did not have a medical history of any food allergies nor exhibit to SCCF medical staff any symptoms of food allergies. Plaintiff was treated by SCCF medical staff on numerous occasions without any complaints about food allergies. Finally, the relevant medical test established that Plaintiff does not have any food allergies. Thus, the Court concludes that Plaintiff did not have a serious medical

condition necessary for his claim and the Defendants were not deliberately indifferent to Plaintiff's needs as evidenced by the alternative diets offered to him.

For these reasons, the Court concludes that the Defendants motion for summary judgment should be granted and the Plaintiff's amended motion to dismiss the Defendants' motion for summary judgment should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 27th day of September, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge